## J. R. KELLEY v. THE STATE.

No. 20640. Delivered January 31, 1940.
Rehearing Denied March 27, 1940.

The opinion states the case.

*William H. Scott* and *King C. Haynie,* both of Houston, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of an attempt to suborn a witness to commit perjury, and was sentenced to a term of four years in the penitentiary.

The witness thus attempted to be suborned was one Jean Randall, a keeper of the Dixie Hotel in Galveston where it is evident some women prostitutes resided. One Pablo Porter and his wife appeared at such hotel just prior to the commission of this alleged offense, and Mrs. Porter attacked Jean Randall, who was also struck by Mr. Porter, according to her testimony, and while the women were fighting one John Gates, who roomed at such hotel, came out of his room, evidently having been asleep, and asked: "What's the trouble here?" whereupon Mr. Porter began cursing Gates, and eventually struck him a blow upon the head with a pistol, which blow knocked Gates down and caused blood to flow therefrom. Gates was taken away at

such time and received attention. Mr. Gates filed a complaint against Mr. Porter, charging an aggravated assault, and an examining trial thereon was set before Justice of the Peace Piperi in Galveston at a date subsequent to the happening of the alleged criminal act herein.

It is alleged in the indictment and proven by two witnesses that J. R. Kelley, the appellant, came to Jean Randall's hotel and had a conversation with her in which he wanted her to swear that Mr. Porter struck Gates with a pair of dark gloves rather than with a pistol, and in the ensuing struggle Mr. Gates fell against a door knob and cut his head. In such conversation there arose the problem as to what to do with two girls and a negro maid who had also seen the transaction between Mr. Porter and Mr. Gates. After some talk, the State's evidence showed that Mr. Kelley took a blank envelope and made thereon some figures showing how much it would cost to get the two girls out of town, and also the negro maid, and the amount to be given Jean Randell to thus swear falsely. Kelley then went away, and afterward returned with $50.00 in money, and gave two $20.00 bills to Jean Randall, and kept $10 for himself, this money being given in order that the two girls should leave town and Jean Randall was to get $50.00 after she had thus sworn falsely at the trial. Relative to this matter we quote Jean Randall's testimony: "Mr. Kelley and I sat down under the light on the floor, and we sat there and talked about getting these girls out of town. As a result of our conversation I got the $50 for the purpose of getting the girls out of town, but I never have gotten or never did receive the $50 to testify falsely in the case against Pablo Porter. I didn't get that $50, and the $50 I got was not for that purpose."

In the beginning of these negotiations Floyd Hall, a policeman, had been requested to remain at this hotel temporarily by Jean Randall because of her fear that Porter would return there, and the officer was in a concealed position near where the negotiations were taking place, and could hear all the conversation. When the two $20.00 bills were given to Jean Randall he appeared upon the scene and took possession of such bills, as well as the $10.00 kept by appellant, and he also possessed himself of the envelope on which appellant had done this figuring, immediately placing appellant under arrest.

Appellant in his brief first complains because the indictment herein fails to charge that appellant attempted to induce the witness Randall to *deliberately* and *wilfully* give false testimony. His contention, if followed out to its logical conclusion,

would be that it was necessary to embody in an indictment such as this a further indictment for perjury. This is not necessary. The indictment does say that: "* * * J. R. Kelley did then and there unlawfully, wilfully and corruptly attempt to induce and procure Jean Randall to commit the offense of perjury in the said judicial proceedings, * * *."

Perjury is a matter that is defined by statute, Art. 302, Penal Code, and its constituent elements should be set forth in an indictment therefor, but not so in an indictment for an attempt to suborn to perjury. Its meaning is well known, and as statutorily defined, and under its generic term, it is sufficient, so we think, to follow the statute in thus alleging that the appellant corruptly attempted to induce Jean Randall to commit the offense of perjury, thus leaving the definition of the elements of perjury to the statute, as set forth in the court's charge.

Again appellant complains because of the court's failure to charge that before a conviction could be had herein it was necessary to charge that appellant attempted to induce the witness Randall to deliberately and willfully give false testimony. It is noted above that the word "perjury" contains those above elements, and a charge that such appellant attempted to induce the witness to commit perjury in the giving of a certain false statement, in our opinion, would carry with it the necessary implication that the false statement would have to be made deliberately and willfully, as well as falsely. We do not think the court's instruction thereon was erroneous, and we note that no objection thereto appears in the record. The case of King v. State, 117 S. W. (2d) 800, is not in point. This complaint is overruled.

Appellant's third complaint is that the trial court erred in that he charged the jury that in order to convict herein they must find from the evidence beyond a reasonable doubt that appellant offered to give or pay the witness Jean Randall $50.00 in order to get her to swear falsely. He gives as his reasons for so saying: (1) That the witness Jean Randall testified that she was to get $100.00—not $50.00, and (2) that Porter and not appellant was the person who actually made the offer. It is true that a portion of the witness Randall's testimony does read as follows: "I, said, 'Well, how much is for myself?' so they agreed to give me $50.00 if I would do that. Porter was supposed to send me $50.00, send me $100.00 up there by Mr. Kelley."

It will be noted, however, that appellant's attorney failed to quote the testimony of the witness Randall just preceding the above quotation, as follows: "I have two rooms, a bedroom

and a living room. We went through the bedroom into the living room, where we sat and talked; so I said—he said, 'Well, let's figure this out,' so we got a piece of paper and we figured on it, or rather Mr. Kelley figured on it. It was an envelope, almost a square envelope. And so he figured on it, and I said: 'Well, there is three witnesses that would have to be gotten away. They have to testify. They have already been subpoenaed,' and he said, 'Well, how much would it take?' and I said: 'Well, I don't know. I imagine at least $25 to get them out, and there is the maid. She saw it all, and she would have—I would have to pay her a salary, because maybe she wouldn't get a job right away.' He said, 'Well, would you say $25 for the girls to get them away?' 'Well,' I said, 'I imagine that would be bus fare and $25 for the maid'."

It is also true that there were two propositions spoken of in the preliminary discussion of this matter between the appellant and witness Randall, as shown by her testimony and corroborated by the envelope introduced in evidence, and shown to have been figured on by appellant. The envelope identified by the witness Randall, and also by the watching policeman Hall, reads as follows:

"This envelope shows: '3 girls, $25.00; maid, 2 weeks, $25.00; you, $50.00,' and then there is '$100.00' underneath it. Then over here is: 'Expenses, $25.00; Maid, $25.00, 2 weeks; you, $100.00.' At the top is '2,' and that is '1st.'

"When he wrote that stuff he was figuring how much it would take for the fare for the people to leave, for the witnesses to leave.

"With reference to that '1st' and '2' he said '1st' was one way, if it was $100, and '2' was if he could get $150. He did some figuring on that piece of paper, and then he went off; then he was gone.

"He called me back, and there was a conversation of how much money he could get, and he asked me—he told me that he could only get $50, that they would give me another $50 and put it in a lawyer's hand to hold. I said: 'I don't know of any lawyer that would hold $50. In fact, I don't know any lawyers.' So he said, 'Well, would you trust me?' Well, he argued back and forth. He said, 'Can't you trust me? You know me.' I said, 'Well, I guess I could,' so he eventually brought the $50 up, and he came in the room, and he handed me two 20's, and he said, 'Now, this is for myself,' and he kept $10, and at that Mr. Hall came in and took the money from me and searched Mr. Kelley and took the money from him."

As to appellant's second contention herein, it is sufficient to say that this was not a subornation to perjury; it was only an attempt to suborn, and the facts show that Jean Randall was not to get any money until she had thus testified falsely. She was dealing with Kelley alone, and it is not shown that he actually suborned her to perjury, but that he and not Porter attempted to thus suborn her.

The fourth complaint rests in the failure of the court to charge the jury that in order to convict the appellant, it was necessary to show that appellant gave the witness Randall $50.00, and that if there had been shown that witness received any sum less than that, they should acquit the defendant. We do not so understand the testimony. It is shown therefrom that the final negotiations ended with the statement that the $50.00 displayed in Jean Randall's presence and eventually taken in charge by the officer, was supposed to be used, as set forth on the envelope, in getting rid of the two women, and' the remaining $50.00 was to be kept by appellant until the witness had given her testimony at the examining trial. We find that the careful trial court embodied such theory in his charge to the jury, and in such comprehensive paragraph he required the jury to find every constituent element of this offense beyond a reasonable doubt before they could convict the appellant herein. In all his charge he followed the facts proven relative to the payment of the $50.00, and excluded from the consideration of the jury the payment of any money for the purpose of getting these two women out of town, but based the State's right to a conviction alone upon the promise to pay the witness $50.00 after she had given her testimony at the examining trial. We think the charge was justified by the proof and also the allegations.

Appellant complains, however, because the indictment, in substance, alleges that appellant promised to pay, and did pay, to the witness Jean Randall the sum of $50.00 if she would swear, state and testify thus falsely in such examining trial. The contention being that the State alleged this matter with particularity relative to the offer to pay and the payment, and that it was therefore incumbent on the State to thus make such proof not only of the offer to pay but also of the payment. In support of this proposition appellant offers the case of Miller v. State, 65 S. W. Rep. 908, which to some extent substantiates the doctrine contended for. We do note, however, in that case that the court refused to write on the proposition as to whether or not it was necessary to allege such matters of inducement; but it did hold that having alleged such matters,

that it was necessary to prove the same. We do note, however, that in the later case of Hilty v. State, 49 S. W. (2d) 786, this Court held that unnecessary matters thus alleged in the indictment, not descriptive of the offense, could be treated as surplusage, provided of course that an offense was charged by the remaining portion thereof. In that case appellant, a chiropractor, was charged with having treated Fred Tholen, and with having received money in ·payment for such treatment from Fred Tholen. The testimony showed, however, that Fred Tholen's mother paid the money for such treatment, and this Court held in that case as follows: "It is conceded in appellant's brief that the statute does not designate from what sources the money must be received or charged, and that it was unnecessary to make such allegations in the complaint, but, having done so, it is descriptive of an essential element of the offense, and consequently was necessary to be proven as alleged. The boy treated was a boy of 12 years of age and could not make a valid contract, and his mother, having made such agreement, was legally liable therefor. It is a well-established principle of law that all of the material facts which constitute the offense charged must be stated in the indictment and they must be proven in evidence, but allegations not essential to such a purpose which might be entirely omitted without affecting the charge against the defendant and without detriment to the indictment are considered as a mere surplusage and may be disregarded in evidence, but no allegation, whether it be necessary or unnecessary, whether it be more or less particular, which is descriptive of the identity of that which is legally essential to the charge in the indictment, can ever be rejected as a surplusage. Warrington v. State, 1 Tex. App. 173."

It is to be noted that it was not necessary to establish, nor descriptive of, the offense of an attempt to suborn to perjury to state in the indictment that the attempted suborner paid anything to the person who was to give the false testimony, and if the phrase "did pay" can be treated as surplusage, then we would have no matter for contention upon the part of appellant.

If the Miller case supra, is authority for a contrary holding, then we are not in accord therewith, but instead we think the Hilty case, supra, reflects the better reason. We do not think that in an attempt to suborn perjury, it is descriptive of the offense that the payment of anything be actually made, and we do think that the allegation of any payment could therefore be treated as surplusage, and it not be necessary to make proof thereof, provided the elements of an attempt still be present.

That proof of an attempt to suborn can be substantiated by lesser proof than the actual subornation is patent, and that a failure to prove the actual carrying out of a preconceived scheme of the suborner might still carry the elements of an attempt sufficiently to support a conviction for such attempt.

We have carefully considered the remaining complaints and bills of exception, and do not think any error is shown therein.

The judgment is affirmed.

### ON MOTION FOR REHEARING.

BEAUCHAMP, Judge.

All of the matters raised by appellant in his motion for rehearing were thoroughly considered by this court before announcing the original opinion. We have again reviewed the authorities in the light of the appellant's motion and conclude that the proper disposition was made of the case in the original opinion.

The motion for rehearing is overruled.